Case No. 23-1776 Audrey Cabrera et al. K.E.F.B. fined for her next-ranked four-tenths victories at balance versus Islamic Republic of Iran Ms. Konopchinsky for the at-balance Mr. McIntyre appointed amicus garyot Good morning, your honor. May it please the court, Grace Konopchinsky on behalf of appellant K.E.F.B. and I've reserved three minutes for rebuttal. An Iranian-sponsored terrorist attack in Afghanistan robbed K.E.F.B. of her father just two months before she was born. Now the district court correctly awarded salation damages under the FSIA's private right of action to other family member plaintiffs associated with the attack including K.E.F.B.'s mother and siblings and another victim's two-month-old daughter. But it dismissed K.E.F.B.'s claim for lack of standing failing to distinguish between in-utero children and later conceived children. This court should reverse the district court's decision for two reasons. First, it was inconsistent with the state court consensus that in-utero children who are subsequently born alive can assert the same causes of action as already born children. Second, the district court's rationale for denying recovery primarily to avoid a limitless class of plaintiffs that could remain open for decades simply does not apply to plaintiffs who are conceived before an attack and a limited, readily discernible class of plaintiffs. I'll start with the scope of the private right of action. Section 1605AC creates a federal private right of action for U.S. citizens for personal injury or death and it authorizes damages which may include salation damages. Now salation damages originally came from the wrongful death context and they seek to compensate for two harms for the grief and mental anguish from losing a family member and for the loss of society, the loss of love, care, companionship, guidance that family members provide to each other. And this court has instructed the district courts to look to the law of the states and to general tort law in deciding what injuries are compensable under this statute. Given the use of salation and the pre-amendment history of claims that plaintiffs could bring under the pass-through approach, the most relevant causes of action are wrongful death statutes, loss of consortium claims, and intentional infliction of emotional distress. Could I just ask you about why wrongful death statutes are relevant? And the source of my question is just the words we've used in Bettis and Frankel which talk about common law. And as you, I think, would agree, wrongful death statutes are statutes and so it just sort of raises a question of why we would be looking to those statutes. Could you address that? Of course, Your Honor. So you're correct that the language used has referred to common law, but it is referring also to just the law of the states and it so happens that because wrongful death statutes weren't recognized in England at common law, that every state has now enacted a wrongful death statute and that is how family members are able to recover for the death of a loved one, is through that statutory claim. So I think when the Court was speaking to the body of law of the states, it wasn't just referring to their common law decision. Can you give us any assurance that those, and you may be able to, any assurance that those two cases would have come out the same way if the courts had considered not just common law, but state statutory law as well? Well, I think the Court in Frankel said that the district court's decision in Flato was the best description of what is included within the context of salation damages and Flato extensively discusses the wrongful death context and that history. And so the Court was looking to both of those causes of action in determining what claims were compensable under the practice. But Frankel's a little confused, too, because it says at one point that the courts, the Federal courts have no authority to create common law and then goes on to instruct how to find common law. And the case that they cite for the proposition that the Court can't create common law was a pre-amendment case. Correct, Your Honor. So that's got to be, I mean, that's just slipped in there and I don't know whether we ought to pay any attention to that at all. But I was thinking about, to answer the question, and I've had this question, too, if we're authorized to create common law, where do we look? And the usual idea of a common law is that a court without statutes gets a body of cases and it derives a principle from it and then applies that principle in the next case. And that's not necessarily what we're talking about here, because it seems to me that the one thing that's the only thing that's particularly clear is that Congress wanted a uniform Federal cause of action, not different from State to State. And one of the ways of ensuring that is to look at everything the various States have done. That's correct, Your Honor. I think that the creating a uniform cause of action is the key point here. And so there certainly is room for dispute over whether when this Court is interpreting a Federal statute and creating a uniform rule of decision, do we call that Federal common law or not. But for the statements in Frankel and Bettis, I'd be inclined to agree with you that that is the Court creating Federal common law. But there is no dispute about what the district courts are actually doing. If I might add, I mean, before the amendment to the FISA, the Court — and I've sat on some of these cases. I've been around long enough to be pre-amendment. But you would look at State law, but you wouldn't look just at the State common law. You'd look at the statutes, too. Correct, Your Honor. Before the amendment. And it seems odd to me to say that, okay, Congress amended it to make it more uniform, but now you can't look at the statutes. Correct, Your Honor. But before 2008, when the Federal private right of action was enacted, you looked to the specific law of the relevant State. So whatever State the plaintiff was — resided in, that was the law that applied, which led to disparate recovery. It led to family members who happened to reside in Louisiana not recovering, whereas a family member whose father was killed in the exact same attack who lived in Maryland could recover. And so Congress created a Federal private right of action to ensure that there was uniformity across all plaintiffs and that all plaintiffs could assert this claim under the Federal private right of action. It just said — this Court has said because it didn't define what sorts of personal injuries are relevant under the statute, that it should look to those injuries that are recognizable at the common law and in State statutes. And those injuries — the death of a family member and the loss of consortium, loss of solation, mental suffering and anguish that comes from that is certainly recognizable by all the States. So just stepping back a little bit, do you think it's — is it oversimplifying to say the question we should have in mind is could a plaintiff like this recover this type of damages in most States in the country or a lot of States in the country? I don't think that's an oversimplification at all, Your Honor. And we pointed to at least 16 jurisdictions that have held that an in utero plaintiff should be able to assert the same causes of action as an already born plaintiff in the context of the wrongful death and loss of consortium context. So I think that informs this Court's decision that in utero plaintiffs are within the scope of injuries that is recognizable under the statute because their injuries are recognized by a number of the States. And then we also pointed — What's the right denominator? Is it we're looking to all the States in the country or we're looking to all the States in the country that have considered this question? All the States that have considered the question, Your Honor. And why is that? And so here it's 100 percent. And why is that the right denominator? Well, because the Court can't be silent on this issue. Those other 34 States haven't resolved whether an in utero plaintiff can recover or not. But here we have 100 percent of the States that have considered the issue have held that an in utero plaintiff should be treated the same as an already born plaintiff in terms of their ability to assert this claim, which is also reinforced by the second restatement of torts, which recognizes that in utero plaintiffs should be able to recover for torts committed while they were in utero and for the injuries that they suffer from those torts. And so the district court should follow that — should have followed that rationale. Instead, the district court's rationale was flawed for three — Does that — does that — did the restatement cover nonphysical injury to the fetus? It's primarily directed at physical injuries, yes, Your Honor.  And — but a number of the cases — But where — so where does the idea of nonphysical injury come from? So Angelini and LaRosso, two of the district — two of the state court cases that we cited, as well as Anderson, a district court case from this circuit, which was the only district court case that actually allowed an in utero plaintiff to recover, all analogized to the physical tort context. And it simply, from a first principle standpoint, makes no sense to allow a plaintiff to recover for physical injuries that they suffer while they are in utero, but then deny them recovery for mental injuries and emotional injuries that they suffer because of a tort also committed while they are in utero. And that is — that recognition has been made by the state court. So a fetus has rights? The fetus has rights when they are born to assert the claim under the statute, Your Honor. I haven't looked. In the Supreme Court's Dobbs case, did they rely on any of the sort of arguments you're making here? I don't think that Dobbs changes the outcome of this case at all. Most of the decisions that we cited — Oh, it would be in your favor, wouldn't it? Well, yes, Your Honor. To the extent that it affects the outcome, it's certainly in our favor. But I don't think it's necessary to resolve the issue. Why would it be in your favor? Because it advances an additional recognition that an in utero plaintiff should be allowed to recover and should be able to bring claims under this cause of action. But it's not necessary to resolve because she certainly was a national of the United States when she brought her claims. So we're not asking the court to rule that an in utero plaintiff is a person or a national of the United States or anything like that. I was going to go a very different route. Well, me too, but I'll just go ahead. For the IIED tort and the restatement second in 46-2, my understanding of what district courts have said for why we should disregard the presence requirement is essentially that in terrorism cases, the tortfeasor intends to harm absent third parties, and so that's why we should get rid of the presence requirement. Is that a fair description of what they've done? Yes. They have said that the presence requirement is not necessary because of the limitations of Section 1605 AC and the unique nature of terrorism, that it is directed not just at the original direct victim, but at their family members as well. I'm just a little bit confused about that based on the restatement and the elements of this tort as set out there, because an intent to harm the plaintiff is always an element, right? And so then to say, well, this case is special because the defendant intended to harm the plaintiff, and so we get rid of this other element of presence, it strikes me as at least a little bit odd, and I'm wondering if you have thought about that. Right. So under 46-1, there's an intent to harm the direct victim, but under 46-2, the immediate family members of the direct victim can recover, because it's presumed that a tortfeasor who is harming an individual is at least reckless to the fact that they will harm their immediate family members as well. But I will also say, Your Honor, this isn't a claim for intentional infliction of emotional distress. Section 1605AC is a much broader claim for personal injury, including salation damages, and so while district courts have looked to the tort of intentional infliction of emotional distress and the restatement's provisions, this Court should not graft those requirements onto the statute or treat the text of the restatement as if it was the text of a statute. Do you think we should basically just really focus on wrongful death and loss of consortium in order to rule for your client? Do we have to consider the IID issue at all? The Court doesn't need to reach the presence requirement of the IID issue,  and I think the wrongful death statutes provide a sufficient basis for KEFE to recover in their own right. So the Court does not actually need to address the presence requirement. My question was actually pretty connected to Judge Garcia's question. 1605AA, which begins with subsection 1, no immunity, goes to, surprisingly, the foreign state's immunity. Then 1605AC goes to the private right of action. Correct, Your Honor. And you say in your reply brief that any presence requirement goes to the merits, not this Court's subject matter. Do you mean by that that any presence requirement goes to the meaning of C rather than the meaning of A? Correct, Your Honor. There's no question that this Court has subject matter jurisdiction here. Then I guess if that's the case, why wouldn't the same thing apply to any age requirement in C? To any age requirement? Right. The requirement that the district court imposed that the child be a certain age, that the child be born as opposed to unborn. So the Court dismissed her claim for lack of standing. I think it was using standing in the statutory standing sense and just making a determination that the class of plaintiffs who are born after an attack are simply outside the class of plaintiffs who are eligible to recover under the statute. But then it seems like that would be true as well for the presence requirement. That it would address the merits of the private right of action, Your Honor? Right. Well, no. If the presence requirement goes to merits, it seems like the age requirement goes to merits. I say that like I believe it. I'm not saying I agree with that. I'm just wondering if the presence requirement goes to the merits, as opposed to subject matter jurisdiction, why wouldn't the age requirement go to the merits? Because the Court didn't actually consider the text of the statute and the private right of action. It decided that the class of plaintiffs who were in utero at the time of the attack were simply outside of the relevant plaintiffs who could recover, largely for policy reasons, for concern about creating a limitless class of plaintiffs that could remain open for decades. But you think the presence requirement goes to the merits, but the age requirement goes to subject matter jurisdiction? I think that the – no, I'm sorry. The age – I don't think either goes to subject matter jurisdiction at all. Nothing is covered in 1605-A-1. So then why wouldn't we say, okay, there's no immunity because of 1605-A-A. Correct, Your Honor. And then any arguments beyond subject matter jurisdiction get forfeited by Iran. I think the Court should hold that, Your Honor, that the only thing – I just wonder if there's something I'm missing. I mean, that could have been like a one-sentence brief. But I'm not saying it's right. I'm just saying I'm looking for your help to see if I'm missing something. I don't think you are missing anything, Your Honor. Iran waived all of their merits arguments by not showing up to defend the judgment below. The district court dismissed KEFB's claim for lack of standing. And so the sole issue in front of this Court is whether an in utero plaintiff is eligible to even attempt to state a cause of action. I think there may be some confusion over how the district court was using the term standing here. Yeah, I'm trying not to use that term. Okay. I'm trying to talk about terms you use, which include subject matter jurisdiction versus merits. Correct, Your Honor. And I understand that Iran can't, in its absence, forfeit its immunity. Correct. That has to be expressly waived. But once we're past the immunity question and we're into the merits question, it seems like maybe Iran can forfeit any merits arguments. Yes. And if all of this case is now about an age requirement that goes to the merits and Iran is not here arguing against your merits argument, it seems like maybe Iran has forfeited any opposition to your merits argument. So under Section 1605a, we still have to prove our case by evidence satisfactory to the district court. And so I think the district court just held that for the class of in utero plaintiffs, we hadn't proved our case by evidence satisfactory. And that would be true for the presence requirement as well. Had the district court reached it, yes, the district court could have decided the merits of that issue. I see that I am well over my time. I want to make sure I understand this issue, too. So I guess the way I had been thinking about it is just because of what you said, you have to make a sort of at least threshold meaningful showing to be entitled to a default judgment. Part of that is to have a coherent theory of why you're entitled to salation damages. So if we were going to go under the IIED route, we would need to explain sort of maybe the district court didn't mention presence, but we'd have to explain why the presence requirement isn't enforced, just like we would have to explain why the difference between a later born and already born plaintiff doesn't matter. In other words, those two questions are on the same playing field here, aren't they? Yes. I think they both go to the question of whether KEFB can state a claim, not to the question of whether this court has subject matter jurisdiction. Okay. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. I'm Thomas Birch from the University of Georgia. Today one of my third-year students, Mr. Garfield McIntyre, will present argument on our behalf, and I'll be at council table. Thank you, Your Honors. Welcome, Mr. McIntyre. Thank you. Thank you, Your Honor, and may it please the Court. My name is Garfield McIntyre, Jr., and I'll be arguing as amicus curiae defending the district court's decision. Faced with interpreting the scope of foreign sovereign immunity, the district court chose to construe that narrowly, denying salation damages to KEFB. That decision was both reasonable and consistent with generally accepted principles of common law and nothing KEFB has said here today warrants rejecting it. This Court should affirm. I'd like to start with the discussion of the wrongful death statutes because that's where most time was spent. As Judge Garcia pointed out, it's questionable under the language of Frankel whether it's appropriate to look to the specific text of a specific state statute if we're looking to create uniformity in the first place. The exact words that the Court used in Frankel were well-established statements of common law found in state reporters, the restatement of torts, and other respected treatises. So we do think that the restatement, most specifically the third and most recent restatement, is the proper source to look to, even with respect to the state wrongful death acts. Well, I guess as to, you know, one of the things that your own helpful brief says is that in 35 states, whether through wrongful death statute or loss of consortium action, a child can recover this type of damage, right? And it seems like a straightforward way of thinking about this case is 35 states with those two, you know, bodies of law, a child could recover. And then either every or nearly every court to have considered the question has said that an afterborn child can also recover. And, you know, so that KEFE wins. You know, what does that sort of simple view of the case overlook? Well, first, you know, the 35 states that allow for loss of parental consortium do so under the text of their wrongful death acts, but the loss of consortium and salation aren't exactly the same thing. And I point back to Flatow, where the Court acknowledged that there are two separate and distinct harms, as KEFE highlighted, but that the preponderant element of salation damages is mental anguish. And it's notable that it's well established that most states don't allow anyone, children born, allow anyone to recover mental anguish specifically under the wrongful death statutes, separate from IIED claims, which I will also discuss. But on that point, if we look to, you know, it was said 100 percent was the hit rate. But, again, that's based upon the text of individual wrongful death statutes. So I don't think anything from those statutes, with the necessary variation they have across the country, can provide a well-established consensus. I do think that common law loss of consortiums provide a consensus showing that KEFE cannot recover, and that's because most states don't allow for parental, common law-based loss of consortium claims. And the restatement notes that of the 21 jurisdictions that do, courts are roughly equally divided on whether unborn children could. So if we're looking at nine states of 21 that even allow the claim, and that is of all states that even allow for this type of damage to be covered in the first place, that's a minority of a minority. So I don't think that, you know, state wrongful death statutes, whether they allow loss of parental consortium as an element of damage or the common law loss of consortium, stand-alone action, provide a basis for KEFE. Mr. McIntyre, can you tell me if this sentence is correct? In a wrongful death case about the death of a family member, I'm not talking about consortium, just wrongful death. In a wrongful death case about the death of a family member, no state court has drawn a distinction between in-utero children eventually born and already born minor children. Not in-utero children, no. There hasn't been that explicit distinction made. If I could... I'll let you add in a second, but I want to see if we're on the same page about just where the case law is, and then you can tell me more about the case law. What about in an intentional infliction of emotional distress case? Has any state court drawn the distinction between an in-utero child eventually born and an already born minor child? Typically, the case law has not distinguished between a conceived in-utero child and a child who is not conceived at all and would be born significantly later. That's not my question. I'm talking about a child that has not been conceived at all. I'm talking about a child in a mother who's 8 months pregnant and a child who's been born for 2 months. Has any state court... Let's just say this. Has any state court outside of Connecticut in any case distinguished between an 8-month child and a mother who's 8 months pregnant and a child that's 2 months born? Assuming the child whose mother was pregnant is eventually born. I'm not aware of a case that made that specific distinction, Your Honor. And I wonder... I told you I'd let you add to it, so I will save my next question. The last thing that I would say about specifically those statutes is the 12 cases, not 16, that were originally cited in the opening brief, only 5 of those allow recovery for any type of emotional harm. So, you know, I think that's really the correct number to be looking at as opposed to the 12 or today's 16. With respect to Section 869, which was discussed, and it was asked whether that could allow for mental injuries, that's certainly not well established. We wouldn't dispute that Section 869 would allow for recovery of any physical harm done to the unborn child if the child is later born alive and has a physical manifestation of that injury. The district court talked about the problem of a potentially unlimited class. But if we limit it to children who are in utero or already born, that's not an unlimited class, is it? No. I mean, there would necessarily be a fixed number of individuals who would be born at the latest 9 months after. Can you think of a rational basis to distinguish in this context between a child whose mother is 8 months pregnant and a baby that's 2 months old? Well, we think that Congress intended to create different types of damages that may be available to different types of plaintiffs depending upon their status. And, for example, let's say that there had been an allegation by KEFV of an economic harm, lost income from the service member. That would be very different because their presence wouldn't be required. It wouldn't be required that she necessarily, at least under the current law, be born. There would be a lot of different considerations to be made with respect to standing. Here, it is only salation damages that is at issue. And so I think that's where we have to get into can mental damages be recovered under either 869 or the IAED where the plaintiff is not present. I think that I didn't... I'm not sure I understand what the rational basis might be between distinguishing in this context between a child whose mother is 8 months pregnant and a child that's 2 months old. Maybe there is no rational basis to distinguish them. Well, Your Honor, Congress certainly did not make specific findings as to, you know, if they were going to make distinctions between, you know, in utero versus an alive plaintiff. I can say that, you know, because there are different types of damages available, all of which may not necessarily require the plaintiff to be alive at the time that the attack occurred, if they were in utero. Again, specifically the economic harms is the one that would most squarely fit with that. That it is possible that Congress could have intended to allow certain plaintiffs to get certain types of damages while not allowing others. So with salation damages, and I understand we appointed you to argue this position, so I'm not — I'm grateful to you for helping me think through these issues. With regard to salation damages in the context of this case, if I can't find a rational basis to distinguish between a child whose mother is 8 months pregnant and a 2-month-old baby, it seems like the plaintiff here might even have an equal protection claim. If there's no rational basis for the district court to distinguish or to interpret Congress's statute to distinguish between a child whose mother is 8 months pregnant and a 2-month-old baby. Well, to that I'd highlight that, you know, it's been a more recent development. I'd say that we've shifted towards, I'm going to say widespread acceptance, that, you know, more states in some respects, in some degrees, are allowing certain types of claims by unborn plaintiffs. And, you know, Congress would have been aware of the legislative history at the time, but that was a different history, I think, than today, where this would have perhaps more widespread acceptance if Congress were to enact it today. I think that sort of policy would make a — that would be more impactful. With respect to equal protection, there are bases that Congress could have potentially considered again, not allowing certain plaintiffs for certain reasons to recover certain types of damages, I think, is the most prescient. And the reason would have to be rational, though. Yeah, and I think that it's a mix of allowing plaintiffs to recover for these types of terrorist attacks while also limiting the scope of liability. So I think there is a balance. And part of that is kind of why I think Congress also shifted towards, you know, the uniformity approach, where under certain state statutes, you may have large or, you know, recovery, or under certain states, you might not have the ability to recover at all. Can I ask you about the in-presence requirement or not requirement? And I think Judge Garcia's line of questioning, you know, may — is helping me understand why IED might not be the right bucket to be thinking about anyway. I'm not saying he thinks that, but it's helped me think through that question. But just in terms of the statute itself, what Congress wrote, I mean, Congress said we want certain people to be able to recover when a foreign terrorist state has materially supported a terrorist attack. I don't understand how that could possibly include a presence requirement, because the victim is never going to be there when the material support is provided. I think that the presence requirement arises in this case under effect specifically because, again — and this is kind of a two-step thing — because the only harm alleged was salation, and the Court has to look to the substantive theories for standing to bring a salation claim, whether it's 46-869, wrongful death acts, or common law loss of consortium, that we necessarily have to, without getting into the merits, see if there is even enough there to confer standing, specifically under 46, which is where the presence requirement comes from. So the presence requirement is implicated by virtue of salation damage being the only alleged harm and determining whether for salation damage is standing. But Congress said we want there to be salation damages, right? Right. How could Congress have said we want there to be salation damages for material support, and yet we are going to require a presence requirement for salation damages when it's impossible to be present for the material support? No one will ever be present. No victim will ever be present for material support. It's not like the victim of a terrorist attack is going to be, you know, in the mountains between two states and somebody hands the rocket-propelled grenade to the other person. Right? Right. I think — and, you know, I've repeated this point, but I think that because there are other types of damages that are available that don't require a presence, it's not necessarily that Congress explicitly required, you know, presence for all of these claims to be brought. And under the salation context, for example, Section 46.1, if it would have been a victim of a terrorist attack that, for example, survived, that would allow them to recover. That would be one where the presence requirement is not necessarily implicated because 46.1 doesn't have that, but it just has to be directed at the person. I think that the distinction kind of comes in where here there's a situation where because the salation damages, again, necessarily require us to look to these different theories since this Court can't craft a body of common law, that that presence requirement — because I would start with the initial position that we do think 46, because this Court has acknowledged in upholding Frankel, is indistinguishable from a claim for salation. That's the appropriate benchmark. So under 46, if presence is required and if they can't show that, we think that's the most important analog. So I first wanted to dispute the premise that State wrongful death acts were the appropriate source of law, because this Court has never referenced statutory law explicitly in determining or in stating what sources a court — a district court — I'm curious to hear what reasons you have for that. One reason you gave was that State wrongful death statutes necessarily are worded differently and that that might be an obstacle. Is there another reason that we wouldn't look at wrongful death statutes, which essentially are defining whether somebody in KEFE's position could recover? I do think the uniformity argument is the most powerful, because specifically when Congress was intending to move away from such a varied approach, I do think that, you know, going through the process of amending — I certainly appreciate that. That could be important in another case, right? But if, as you say, in 35 cases, even if they're all — the statutes are all worded differently, on the question we have in front of us, can an in utero — or, sorry, can a child, I'll just say, recover this type of damages? And the answer is yes. Then that seems to satisfy whatever concern we would have for uniformity. That is assuming, of course, that the court accepts that salation and parental consortium are the same thing, and we don't think that they necessarily are. Again, because Flatow distinguishes the two, and KEFE mentioned that there were two separate. I would describe those as mental anguish and loss of comfort in society as the two buckets. Flatow stated that mental anguish was the preponderant element, but most states don't allow, again, not just children, but anyone to recover those types of damages under their wrongful death acts. So although they allow loss of parental consortium, that's not including the mental anguish that necessarily is implicated in this case. Is there a reason why the loss of parental consortium aspect isn't enough? It seems sort of undisputed that that's a harm that KEFE suffered. I think that because the preponderant element is the one that KEFE cannot show, that that's the one that should hold the most weight with this court. I see that I'm over time. I would ask this court to affirm the judgment of the district court. Thank you. Thank you. Any more questions? I believe I deserve some time for rebuttal, but I went over my time. So with your permission. We'll give you three minutes. Thank you, Your Honor. I'd like to start with what is encompassed by salation damages. And this Court said clearly and frankly that it is both the mental anguish and the loss of society. And so those are the two harms that make up the element. And I think Judge Garcia was correct that you can look to you have to look to both harms. There's no question that KEFE suffered the same loss of consortium harm as a very young infant, as any child, perhaps even a greater loss of consortium claim because she has been deprived of her father's love and guidance for her entire life. And there's no question that she also suffered mental anguish. Certainly the mental anguish may be different than an older child who understands at the moment of losing a parent what has happened. But she still has that same mental anguish here. And so the court should look to both of the wrongful death and the loss of claims in giving scope to Congress's broad private right of action for personal injury or death, including salation damages. What year was the attack? The attack was in 2006, Your Honor. I'm sorry, August 6, 2011. In 2011 at that point, can you speak to whether KEFE was a member of the Vickers family? Yes, she was an unborn member of the Vickers family, Your Honor. I guess I'm asking for you to share why that's so. I'm not disagreeing with you. Because her mother was seven months pregnant. She was his third child that he was looking forward to welcoming into the family. I think that she is a member of his immediate family. He is her biological father. And unless the court has additional questions, the court should reverse the district court's decision that in utero plaintiffs lack standing under the FSIA's private right of action and remand for the district court to award damages. Thank you, Ms. Kowalski.
judges: Walker; Garcia; Randolph